UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

DEMARI DAY,

Defendant.
_______________________________/

Case No. 2:26-cr-20173

Honorable Susan K. DeClercq
United States District Judge

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (ECF No. 26)**

After a shooting homicide occurred on a freeway in April 2025, law enforcement quickly identified Defendant Demari Day as a suspect. When an informant told officers that Day was one of the shooters and that the weapons involved were at a location that Day frequented on Cherrylawn Street, officers secured a search warrant for that location. But officers did not find the guns involved in the homicide at that location. Over six months later, officers sought a warrant to search Day's residence on John C. Lodge Freeway. Day now faces one count of unlawful possession of a machine gun, which was recovered from his residence through the warrant and resulting search. Day moves to suppress evidence from the search, arguing that the warrant lacked probable cause because the affidavit did not establish a sufficient nexus between Day's residence and evidence relating to the

homicide. As explained below, the nexus standard for homes of those suspected of being involved in a crime with a gun is incredibly low, so the motion will be denied.

## I. BACKGROUND

In the afternoon of April 26, 2025, a shooting homicide occurred near I-94 and 10 Mile Road in St. Clair Shores, Michigan.[1] ECF No. 26 at PageID.91. According to eyewitness accounts, a suspect in a silver Dodge Dart fired a weapon at a black Chevrolet Malibu while both were driving on I-94. *Id.* at PageID.92. The Malibu pulled off onto the right shoulder of the interstate. *Id.* Meanwhile, Flock cameras recorded the Dart drive away before eventually exiting the interstate. *Id.* at PageID.93.

Law enforcement received a 911 call, and officers were dispatched to the scene where the Malibu was parked. *Id.* at PageID.91. There, officers saw the Malibu with bullet holes and shattered windows. *Id.* at PageID.92. The driver and passenger were transported to the hospital to receive treatment for gunshot wounds, and the passenger died several hours later. *Id.* at PageID.92–93.

The next day, officers used Flock camera footage and the Law Enforcement Information Network ("LEIN") to identify the suspect Dart car and determined the

[1] Facts surrounding the events prior to the execution of the search warrant come from the affidavit, ECF Nos. 26 at PageID.89–100; 28-1 at PageID.130–40. *See United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) (requiring courts to consider only the information contained with the affidavit to determine whether probable cause existed for a search warrant).

name, address, and possible phone numbers of its registered owner, Kwuan Miller. *Id.* at PageID.93; *see also* ECF No. 28-1 at PageID.133. With permission from the phone's service provider, officers used its real-time location information to locate the Dart, and they "established covert surveillance." ECF No. 26 at PageID.64.

On April 28, 2025, officers arrested Miller. *Id.*; *see also* ECF No. 28-1 at PageID.134. Through a warranted search of Miller's phone, officers found that he corresponded with an individual saved in the phone as "Mari" on the day of the homicide. ECF Nos. 26 at PageID.93–94; 28-1 at PageID.133–34. While in jail, Miller talked on phone calls about "erasing phone data," and an individual called "Mari." ECF Nos. 26 at PageID.95; 28-1 at PageID.135. One of the callers was Miller's girlfriend, whom Miller told to contact another individual for him. *Id.* Officers interviewed the girlfriend, and she shared that this individual was Defendant Demari Day. ECF Nos. at PageID.95–96; 28-1 at PageID.135–36. Miller's girlfriend provided officers with Day's phone number, which matched the number for "Mari" in Miller's phone. ECF Nos. at PageID.96; 28-1 at PageID.135–36.

In June 2026, officers received information from an informant who shared knowledge about "a homicide on the eastside in the last month or so . . . [that] took place on the freeway." ECF No. 28-1 at PageID.137. The informant "believed the driver of the suspect vehicle was arrested, but the shooters were not identified." *Id.*

The informant then told officers that Day and another individual "confessed to him privately to committing the homicide." *Id.*

According to the informant, the shooters frequented a location on Cherrylawn Street in Detroit, Michigan ("Cherrylawn"), where the informant had seen several guns—including the two specific guns that Day and the other individual allegedly used in the homicide. *Id.* The informant described the guns as a 7.62 caliber and a 9mm caliber pistol with a Glock switch. *Id.* He stated that these two guns had been at Cherrylawn "since the homicide" and he had "observed [them] yesterday." *Id.*

Officers secured a search warrant for Cherrylawn on June 12, 2025, and executed the warrant the following day. ECF No. 26 at PageID.98. At Cherrylawn, officers found six guns, including a 7.62 caliber and a 9mm caliber pistol with a Glock switch. *Id.* Although these were the same caliber as the guns used in the homicide—according to the ballistics evidence recovered from the homicide scene, *id.*—they were not the guns used in the homicide. *Id.* at PageID.99 (noting that by December 2025 "Detectives [had] not recovered the firearms used in this shooting homicide").

Six months after the Cherrylawn search, officers secured a search warrant for Day's phone to track his movements. *Id.* Officers conducted a LIEN search to identify an apartment on John C. Lodge Freeway in Detroit as Day's listed address.

*Id.* This address is part of a complex: McCoy Townhouses.[2] *Id.* Michigan State Police Detective Sergeant Benjamin Murphy—who was the affiant for the search warrant affidavit—verified that Day resided at a particular unit on John C. Lodge Freeway by speaking with McCoy Townhouses employees. *Id.* at PageID.96. According to Affiant Murphy, Miller's phone extraction data "suggests that the user [of the phone] was navigating to [another unit on] John C. Lodge Fwy. minutes after the shooting." ECF No. 28-1 at PageID.136.

On January 8, 2026, Affiant Murphy submitted a request for a warrant to search Day's residence. *See* ECF Nos. 26 at PageID.100; 28-1 at PageID.140. Affiant Murphy stated that in his training and experience, "evidence pertinent to circumstances surrounding a shooting [would] be located on a suspect's person, in their residences, and in their vehicles." ECF No. 26 at PageID.100. Affiant Murphy also noted that "Day is associated with multiple addresses" and "that it is common for suspects of serious criminal offenses to hide or conceal evidence of the crime committed at a residence other than their own, in efforts to prevent law enforcement from finding or locating the same." *Id.*

A magistrate judge granted the search warrant that day. *Id.* Then on January 9, 2026, officers executed the search warrant and recovered five guns. ECF No. 28

[2] According to Day, there are about 70 units in that complex. ECF No. 31 at PageID.177.

at PageID.115. Three days later, the Government filed a complaint and Magistrate Judge Elizabeth A. Stafford issued an arrest warrant for Day. ECF Nos. 1; 5; 6. In March 2026, Day was charged with one count of unlawful possession of a machine gun in violation of 18 U.S.C. §§ 922(o). ECF No. 18.

On July 31, 2026, Day moved to suppress all evidence seized during the search of his residence, arguing that the search warrant did not establish probable cause because the affidavit failed to provide a sufficient nexus between Day's residence and the guns used in the homicide. ECF No. 26. The Government responds that the standard in the Sixth Circuit is low, and being a suspect of a crime involving a gun is enough to create a nexus between the gun and the suspect's residence because guns are likely to be kept at suspects' homes. ECF No. 28. Day responds that the standard is a rebuttable presumption, and here, Affiant Murphy admitted that he and officers believed the guns were at the Cherrylawn address—yet sought to search Day's residence over six months later without articulating new facts or suspicions about his residence as the location of the guns. ECF No. 30.

A hearing on the motion was held on October 1, 2026. *See* ECF No. 31.

## II. LEGAL STANDARD

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend.

IV. Probable cause for a search requires a "fair probability" that contraband or evidence will be found in a particular place or on the premises of the proposed search. *United States v. Terry*, 522 F.3d 645, 648 (6th Cir. 2008) (quoting *Ill. v. Gates*, 462 U.S. 213, 238 (1983)). The affidavit supporting the search warrant must also establish a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (citation omitted).

To determine whether probable cause existed for a search warrant, a court must examine only the information contained in the "four corners" of the accompanying affidavit, and must consider the totality of the circumstances. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006). The reviewing court must also ensure that the initial judge had a "substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 238–39 (citation modified). The initial judge's determination of probable cause is entitled to "great deference and should be reversed only if arbitrarily made." *Jackson*, 470 F.3d at 306.

Even if an affidavit lacks probable cause and thus violated the Fourth Amendment, exclusion is not a proper remedy "when law enforcement officers have acted in objective good faith or their transgressions have been minor." *United States v. Leon*, 468 U.S. 897, 908 (1984). Good-faith reliance is an objective standard that considers whether a "reasonably well-trained officer would have known that the

search was illegal despite the magistrate's authorization." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 645 (6th Cir. 2003) (citation omitted).

Ultimately, evidence need only be suppressed when the search warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id.* at 923 (quoting *Brown v. Ill.*, 422 U.S. 590, 611 (1975) (Powell, J., concurring in part)). Specifically, an affidavit is "bare bones" if it "merely states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. O'Neill*, 94 F.4th 531, 541 (6th Cir. 2024) (citation modified). But an affidavit is not "bare bones" just because it fails to establish probable cause. *United States v. White*, 874 F.3d 490, 496–97 (6th Cir. 2017). Rather, "reasonable inferences that are not sufficient to sustain probable cause may suffice to save the ensuing search as objectively reasonable." *Id.* at 500.

Finally, the good-faith exception may apply where "the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched, . . . even if the information provided was not enough to establish probable cause." *Carpenter*, 360 F.3d at 596.

## III. DISCUSSION

### A. Nexus

Day contends that the search warrant is facially deficient because it failed to

establish probable cause that his residence would contain evidence related to the homicide. ECF No. 26 at PageID.86. Day argues that the affidavit did not show a sufficient nexus between the evidence and Day's home because the only connection was Day being a suspect and Miller's phone suggesting that Miller drove to McCoy Apartments after the shooting. *Id.* The Government argues that under Sixth Circuit precedent, the fact that Day was a suspect for a crime involving a gun meant that there was a sufficient nexus to search his residence, given the nature of guns as personal items often kept in owners' homes. ECF No. 28 at PageID.117–24. This Court finds that it must deny the motion because it is bound by the holding in *Peffer v. Stephens*, 880 F.3d 256 (6th Cir. 2018).

"[W]hether an affidavit establishes a proper nexus is a fact-intensive question resolved by examining the totality of the circumstances presented." *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016). Courts "long ago determined" that establishing probable cause requires the affidavit to show more than "merely that the owner of property is suspected of a crime." *Peffer*, 880 F.3d at 270 (citation modified).

However, the Sixth Circuit held in *Peffer* that showing an "owner of property is suspected of a crime" involving a gun is enough to establish a nexus between the suspect and his residence for the purposes of searching for the gun, stating that "[a]s

a general rule, it is reasonable, *ceteris paribus*, to assume that a person keeps his possessions where he resides." *Id.* at 270 – 71. The Sixth Circuit reasoned as follows:

> The requirement that there be additional reason to think that evidence of the crime will be found in the criminal's residence is not as onerous as it may appear. A magistrate may infer that the evidence sought is likely to be found in the criminal's residence based on "the type of crime being investigated, the nature of the things to be seized . . . and the normal inferences that may be drawn as to likely hiding places," and "it is reasonable to suppose that some criminals store evidence of their crimes in their homes, even though no criminal activity or contraband is observed there." *United States v. Williams*, 544 F.3d 683, 686–87 (6th Cir. 2008).
>
> * * *
>
> When it comes to guns, because we "have acknowledged that individuals who own guns keep them at their homes," *United States v. Smith*, 182 F.3d 473, 480 (6th Cir. 1999), a suspect's use of a gun in the commission of a crime is sufficient to find a nexus between the gun that was used and the suspect's residence.

*Id.* at 270–71.

Here, the affidavit amply showed that Day was a suspect of a crime involving guns. *See generally* ECF Nos. 26; 28-1. Under *Peffer*'s meager standard, this appears sufficient to establish a nexus between Day's residence and guns used in the homicide for which he is a suspect. *See* 880 F.3d at 272. Indeed, the Sixth Circuit in *Peffer* unequivocally held that because personal possessions are often kept at the owner's residence, "[i]t is clear that the use of a gun in the commission of a crime is sufficient to establish a nexus between the suspected criminal's gun and his residence." *Id.*

This Court is troubled by the Sixth Circuit's "astonishingly broad interpretation" of the probable cause standard. *See* Jonah Bamel, *Does Not Compute:* Peffer v. Stephens*, "The Nature of a Computer," and Probable Cause to Search Your Home*, 9 WAKE FOREST J.L. & POL'Y 275, 275 (2019) (citation modified). Establishing a nexus under the *Peffer* standard is no longer "not as onerous," but rather, not onerous at all. *See Peffer*, 880 F.3d at 270. Indeed, it appears that an affidavit need only show facts concerning three things: (1) that an individual is a suspect of a crime (2) the crime involved a gun, and (3) the individual has a current residence. *See id.* at 272. If an affidavit showing just these three things is not "bare bones," this Court wonders how much barer the bones of an affidavit must be to find that an officer lacked reasonable grounds for a search. *See United States v. Lewis*, 81 F.4th 640, 648 (6th Cir. 2023) ("[A] bare-bones affidavit is a conclusory affidavit that states only the affiant's belief that probable cause existed." (citation modified)).

Nevertheless, this Court is bound by *Peffer*'s holding and so must find that the affidavit established a sufficient nexus between the evidence sought and Day's home. *See Peffer*, 880 F.3d at 270–72; *see also United States v. Lee-Stinson*, No. 22-20505, 2023 WL 2947543, at *2–3 (E.D. Mich. Apr. 14, 2023) (collecting cases finding a sufficient nexus between a firearm used in a crime and a suspect defendant's residence).

**B. Rebuttable Presumption and Good Faith**

In *Peffer*, the Sixth Circuit stated "[a]s a general rule" that it is reasonable to presume that a person's residence is where possessions like guns would be kept. 880 F.3d at 270. But, the Sixth Circuit noted, this presumption is "rebuttable and cannot always be relied upon by a magistrate in finding a nexus between the object used in a crime and the alleged criminal's residence, because the 'totality of the circumstances presented' in the affidavit may suggest that the object is more likely to be found elsewhere or nowhere at all." *Id.* (quoting *Brown*, 828 F.3d at 382). Thus, the *Peffer* standard provides that "a magistrate may presume that there is a nexus between that object and the suspect's current residence, *unless the affidavit contains facts that may rebut that presumption*." *Id.* at 270–71 (emphasis added).

Day argues this rebuttable presumption exception applies, extinguishing probable cause and good faith. ECF Nos. 30 at PageID.146; 31 at PageID.156. Specifically, Day claims he has rebutted the presumption that evidence would be found at his residence because the informant told officers that the guns used in the homicide were at another location—the Cherrylawn address. ECF Nos. 30 at PageID.146; 31 at PageID.156. The Government responds that this does not rebut the presumption, and in any event, the good-faith exception would apply because the officers reasonably relied on a heavily detailed affidavit. ECF Nos. 28 at PageID.127; 31 at PageID.169. This Court finds that circumstances surrounding

Cherrylawn do not fall within *Peffer*'s rebuttable presumption exception, and even if this Court were to find that there was not probable cause to search Day's residence, this Court would be further compelled to find that the good-faith exception applies.

As *Peffer* noted—and the Government argued at the hearing—facts that may rebut a presumed nexus between a suspect's residence and a gun used in a crime include evidence that the gun "was discarded, sold, or was otherwise disposed of." 880 F.3d at 270; *see also* ECF No. 31 at PageID.169 (providing an example where the informant had told officers that the suspects "threw their guns off the Belle Isle Bridge into the depths of the Detroit River"). The Sixth Circuit further provided that "evidence suggesting that the [gun] was not owned by the alleged criminal" or that the gun does not exist anymore would rebut the presumption about the gun being at the suspect's residence. *Peffer*, 880 F.3d at 270. Here, no such evidence about the guns being discarded, destroyed, or not owned by Day, was contained in the affidavit *See generally* ECF No. 28-1.

But *Peffer* includes a final example of evidence that might rebut the ordinary presumption: the affidavit shows that the suspect stored his gun somewhere other than his residence. 880 F.3d at 270. Day relies on this language, arguing that the affidavit clearly outlined evidence from the informant that the guns were at Cherrylawn. *See* ECF No. 30 at PageID.145. However, the information about Cherrylawn was not presented as an equal alternative to the presumption that the

guns would be at Day's address. Instead, the Cherrylawn information bolstered that the police had already ruled out this location, making the presumption that the guns were at Day's residence arguably *more* likely. *See Gray v. City of Detroit*, No. 17-cv-13548, 2018 WL 4745304, at *4 (E.D. Mich. Oct. 2, 2018) (finding a search of a home was lawful after the car was searched and ruled out and stating that "[b]ecause [the officer] did not find the guns in [the p]laintiff's car, there was probable cause to believe that they were located inside of the house"). Had the affidavit stated that the informant told officers about Cherrylawn, but that officers had not searched Cherrylawn and instead immediately searched Day's residence, this would have rebutted the presumptive nexus to Day's residence because both locations were unsearched, and, therefore, on equal footing. But because Cherrylawn had already been searched, the presumption that the guns would be at Day's residence, again, was arguably stronger.[3]

This Court need not address the good-faith exception because this Court has already found that the search warrant provided probable cause to search Day's residence. *See United States v. Pinson*, 321 F.3d 558, 565 (6th Cir. 2003). But even

[3] Again, this Court is bound by *Peffer* but calls into question how the rebuttable presumption exception would work on a practical level, because it seems highly unlikely that an affidavit would provide facts that could rebut its own presumption about the location of evidence. Even if a defendant is aware of information that could rebut the presumption, if that information is not contained in the affidavit, it appears *Peffer*'s exception is untenable.

if this Court could reject *Peffer* and find no probable cause, the good-faith exception would presumably apply because including information about the history of the investigation and places that have been ruled out in the affidavit does not make officers' reliance on that affidavit objectively unreasonable under the generous exception in *Leon*. *See* 468 U.S. at 908.

As is evident in the tenor of this opinion, this Court is troubled that the "good faith exception has proven to be the exception that swallows the rule." *United States v. Sanders*, 106 F.4th 455, 495 (6th Cir. 2024) (Clay, J., dissenting); *see also United States v. Westerlund*, 477 F. App'x 366, 369 (6th Cir. 2012) (Cole, J., concurring) ("But, given our ever-widening *Leon* good-faith exception jurisprudence (an exception that will surely soon, if it has not already, swallow the rule), I respectfully concur on in the result."). The exception was meant to protect officers for reasonable mistakes in a demanding line of work. *See Leon*, 468 U.S. at 908. But when, as here with *Peffer*, the rule does not offer a sufficient bulwark against officer intrusion into individuals' homes, there is practically no need for the exception. The rules should be designed with the worst officers in mind to protect individuals from them, with the exception providing relief for only the best, well-intentioned officers who make honest, "minor transgressions." *See id.*

### C. Staleness

Staleness was not raised directly in the motion to suppress. *See* ECF No. 31 at PageID.165. But the presumption that *Peffer* establishes about suspects' residences is still "subject to a staleness analysis." 880 F.3d at 271 n.10. Information for a probable cause determination can be stale and, therefore, insufficient, depending on the nature and character of the following four factors: the crime, the criminal, the property to be seized, and the place to be searched. *United States v. Freschette*, 583 F.3d 374, 378 (6th Cir. 2009). Even considering the over-six-month delay between the Cherrylawn search and the search at Day's residence—as well as the roughly nine-month delay between the homicide and the search at Day's residence—this Court must find that there was still probable cause to support the affidavit.

Here, the first factor supports a finding of staleness "because there is no evidence that [Day] repeatedly used the gun." *United States v. Bryant*, No. 1:26-cr-19, 2026 WL 2274135, at *5 (W.D. Mich. Aug. 7, 2026). The second factor is more neutral because Day had both a primary residence and was known to frequent the Cherrylawn address. *See id.* (considering whether the defendant "frequently moved around," that is, was "nomadic or entrenched" at a permanent residence). The remaining factors weigh against staleness, given the unique nature of guns that

courts in this circuit have consistently identified, and the fact that Day's "home was not a temporary 'forum of convenience'." *See id.* (collecting cases).

This finding is consistent with the Sixth Circuit's holdings where longer delays did not render stale the information upon which the affidavit relied. *See United States v. Vanderweele*, 545 F. App'x 465, 469–70 (6th Cir. 2013) (holding that a seven-month delay between an informant's statement about the defendant owning a silencer and an affidavit relying on that information for a search did not constitute stale information to preclude probable cause); *see also United States v. Lancaster*, 145 F. App'x 508, 513 (6th Cir. 2005) (finding two-year-old information that the defendant in the case was seen firing a machine gun was not stale because "firearms are not perishable items"); *United States v. Gray*, No. 25-3672, 2026 WL 2021018, at *6–7 (6th Cir. 2026) (holding that the probable cause finding was not based on stale information despite a two-year delay between the crime and the search). In fact, the Sixth Circuit recently held that "neither the passage of time"—in that case, two years between crime and search—nor the suspect moving from one residence to another "rebuts the presumption of a nexus between the murder weapon and [the suspect's] residence." *Gray*, 2026 WL 2021018, at *7. Therefore, this Court is compelled to find that the delay in the present case did not render the warrant stale.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendant's Motion to Suppress Evidence, ECF No. 26, is **DENIED.**

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: October 27, 2026